Please all rise. Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Anne B. Jorgensen is up. Please be seated. Your Honor, the final case on the duct this morning is 2-22-0277. My advisor, Honorable District Attorney, the Board of Education of North Shore School District 112, and my patroller, Mr. Hurst, and our experts, the individuals and as agents of the Board of Education of North Shore School District 112, defendants, appellees. Arguing for the account, Mr. Joshua Clark, Arguing for the appellees, Ms. Emily Teller. Are both sides ready to proceed? Yes. Then when you're ready, counsel. Good morning, Your Honors, and may it please the Court, this appeal arises out of the plaintiff's claim against his former employer, North Shore School District 112, for its violation of his statutory civil rights under the Illinois Human Rights Act, Section 2-103A of the Human Rights Act. For its, by the district's dismissal, or decision to dismiss him from employment based on his arrest record. The issue on appeal today is whether the circuit court erred in granting the district's Section 2-619A-9 motion to dismiss Count 1 of Plaintiff's First Amendment complaint. On the circuit court's erroneous conclusion that the Illinois Tort Immunity Act grants the district absolute immunity from liability for its violation of plaintiff's civil rights under the Human Rights Act. Circuit court's ruling should be reversed for several reasons. First and foremost, even if the Tort Immunity Act were to apply to plaintiff's statutory civil rights claim under the Human Rights Act, which we'll argue in a minute why it doesn't, that still would not constitute an affirmative matter for purposes of a Section 2-619A-9 motion. Is there another way they could have dismissed other than 2-619A-9? They moved under 2-615 that was denied. How about a summary judgment motion? It is possible, but we're not at that stage of the litigation. This was dismissed on the pleadings under 2-619A-9. So it's well settled that 2-619A-9 affirmative matter must negate the cause of action completely. Here, even if the Tort Immunity Act were to apply, at most it would only shield the district from liability for damages and punitive damages. The Supreme Court recently, in the case of Roosevelt v. City of Aurora, expressly acknowledged that under the Human Rights Act there are other non-damages remedies that are available, which plaintiffs specifically requested in his prayer for relief in this case, which would include reinstatement, back pay, costs, and attorney's fees. Therefore, even if the district had some immunity under the Tort Immunity Act, dismissal under 2-619A-9 was not appropriate. This is particularly important in this case because if the district is found to have violated plaintiff's civil rights under the Human Rights Act, it would necessarily preclude the district from establishing irremediable cause, which is necessary to dismiss a tenured teacher under Section 24 of the Illinois School Code. There is another related but separate case actually currently pending before this court on appeal of the district's decision under the school code to dismiss plaintiff, which we are alleging in that case as well that it was on the basis of his arrest record. Therefore, if plaintiff could succeed on his Human Rights Act claim, it would have a preclusive effect on that other case and plaintiff would be entitled to reinstatement and full back pay under Section 24-12D1 of the school code as well as under the Human Rights Act. So this is a separate and independent basis as to why reversal is appropriate in this case. Nevertheless, reversal is appropriate here because the Tort Immunity Act simply does not provide the district with immunity from any liability for its violation of plaintiff's civil rights under the Human Rights Act. First, we'll look at the plain language of the Human Rights Act. We all know that the court's primary objective when interpreting a statute is to ascertain and give effect to the legislature's intent. The best indicator of that intent is the plain and ordinary meaning of the language used in the statute. Here, the plain language of the Human Rights Act clearly indicates that the legislature did not intend for public employers like the district to be immune from liability for civil rights violations that are prescribed under that act. Section 1-101A states the purpose of the Human Rights Act is to secure for all individuals within Illinois the freedom from discrimination in employment. Section 2-101B1C defines the term employer and specifically includes the state, any political subdivision, municipal corporation, or other governmental unit or agency. More importantly, Section 2-101G defines the term public employer and specifically includes school districts. Finally, Section 2-103A, which is the section plaintiff alleges was violated here, states that it is a civil rights violation for any employer to use an arrest record as a basis to act with respect to discharge, discipline, or tenure. Your opponent's position is we did not only use the arrest record, we used additional information we obtained from interviews. Correct, but that issue was not before the circuit court on the 2619A9 motion to dismiss. That was not the basis why the circuit court granted the motion. The basis, according to the circuit court, was that the Tort Immunity Act provides absolute immunity regardless of whether the district had other information. To answer your question, Justice Shostak, from earlier, that may be something that is litigated and ultimately is an issue on summary judgment if the case were allowed to proceed. The other information was in the record, though, correct? Not on the pleadings, no. Nowhere in the record. Not on the pleadings, in this case, what was before the court, before the circuit court, no. The other information is outside of the record. It's outside of the record, that is, the record on appeal in this case, which only spoke on the 2619A9 motion. Was that to sign number 2615? No, there's a count two for intentional infliction of emotional distress, which that was dismissed under 2615, and we've abandoned that claim. Was the other evidence submitted as a defense, was that decided by the court? No. Not. Was it part of the pleadings or the motions on this? No, it was not. Okay. So going back to the plain language of the act, it very clearly, the Human Rights Act very clearly does not intend for there to be this loophole, which would permit public employers such as the school district to be immune from liability for violations under the act. In fact, if that were its intention, it would not have included public employers and specifically school districts in the definitions, and it would not have included the phrase tenure in Section 2-103A. So if the circuit court's conclusion that the Tort Immunity Act does provide absolute immunity from claims under the Illinois Human Rights Act, then it would negate or render meaningless entire portions of the Human Rights Act. Clearly, that is not what the legislature intended, and such a result would be absurd and unjust, and it would violate the cardinal rule of statutory construction. Secondly, the Supreme Court's decision in Smith v. Waukegan Park District is the controlling precedent on this issue regarding the extent of Tort Immunity Act as it applies to other statutory claims for wrongful discharge. And there the Supreme Court noted that... That was a retaliatory discharge claim. It was retaliatory discharge under the Illinois Workers' Compensation Act. But the important reasoning that the court provided there is that the Tort Immunity Act does not apply to these statutory claims against public employers because in a discharge case, the employer is the pertinent actor and not the employee. Therefore, Section 2-201 of the Tort Immunity Act, which provides immunity to public employees, would not apply. The court there further rejected the defendant's argument, which the district in this case likely will make here, that Section 2-109 of the Tort Immunity Act grants it immunity through Section 2-201 because its employees would not be liable under 2-201, and therefore the district employer would not be liable under 2-109. Again, the court rejected that and repeated that the park district in that case missed the point because it's ultimately the employer who acts in a discharge case and not the employee. The Smith holding has been universally followed by courts in Illinois and extended to a variety of other statutory and constitutional claims against public employers involving discharge, including claims arising under the Illinois Whistleblower Act and the Illinois Human Rights Act. The Luce, Zelman, Spratt, and Collins cases, which were cited in the appellant's brief, are primary examples of those cases. Finally, again, even if the Tort Immunity Act could apply to plaintiff's claim under the Human Rights Act, dismissal under 2-619-A-9 was still inappropriate because the district's motion was simply disputed or contradicted plaintiff's well-pled factual allegations. The district submitted what is essentially a not true motion. It's well said of that under 2-619-A-9, the moving party admits the legal sufficiency of the allegations in the complaint and asserts that an affirmative matter outside the complaint negates the cause of action completely. An affirmative matter is not merely evidence upon which the defendant expects to contest the ultimate facts stated in the complaint. 2-619-A- It's nothing more than an answer that denies the allegations. Correct. Basically. Correct. And what the district provided here was essentially that. They submitted the affidavit of Monica Schroeder, in which Schroeder essentially said, I did not do what plaintiff has accused me of doing. And she goes on to explain why her actions were not malicious or without cause and how she was exercising discretion in order to fit it into the certain sections of the Tort Immunity Act. In doing so, she just contradicted most of plaintiff's factual assertions in the complaint. So at most, that affidavit in the district's motion at best creates a dispute of material fact and not an affirmative matter for purposes of immediate dismissal under 619-A-9. This was recognized by the Supreme Court in Smith as well as the appellate court in the loose cases as a secondary basis for why dismissal under 619-A-9 was inappropriate in those cases. So again, here, even if the Tort Immunity Act does provide some immunity to the district, whether it be under 2201, 2208, or 2109, there remained a dispute of fact regarding whether any of the district's employees were exercising discretion or whether any of them acted maliciously or without cause, which plaintiff specifically alleged in his First Amendment complaint. So for each of these reasons, the circuit court's July 21st order, which dismissed count one of plaintiff's First Amendment complaint under section 2619-A-9, was erroneous and should be reversed. The case should be remanded back to the lower court to proceed on the merits of that claim. Thank you. Anything additional? No, thank you. Anything additional? Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Emily Tillich. I represent the defendants, North Shore School District 112, Monica Schroeder, Lisa Hirsch, and Art Kessler. Your Honors, defendants request that this Court affirm the circuit court's dismissal of plaintiff's amended complaint because sections 2201 and 2208 of the Tort Immunity Act apply here and entitle defendants to absolute immunity from liability from plaintiff's Illinois Human Rights Act claim. That might be true down the road, but at this point, 2619, how do you distinguish the Waukegan case and the Luce case? Yes, Your Honor, so the Smith case is distinguishable for two main reasons. First, as you pointed out earlier, it is a retaliatory discharge case, which is not what we have here, and it also explains that the Tort Immunity Act explicitly exempts certain violations, such as those under the Workers' Compensation Act, from tort immunity, which is not the case with the Illinois Human Rights Act. Well, tort immunity didn't bar the discharge, but it would bar them from raising tort immunity at that point. Correct? I mean, am I saying that right? Tort immunity isn't what barred it. The fact that it's retaliatory discharge, they have a right to that. You can't say, oh, well, they are raising retaliatory discharge, but there's tort immunity. Same thing here. How could you raise tort immunity at this point? Yes, Your Honor. So courts have routinely dismissed, you know, on sections 2619 motions to dismiss, based on discretionary actions under the Tort Immunity Act. This is not, you know, a new procedure. But isn't counsel said that this is a not true motion? So it's basically you have filed an answer denying the allegations that were put forth here under 2619. Was it anything other than that? How at this point can you raise tort immunity is my question. Your Honor, for two reasons. So first, plaintiffs have established in their complaint that the district was involved in a discretionary policy decision when it instituted the investigation and made a dismissal determination. In the actual language of the complaint itself, we see that the district learned about Mr. Wagner's arrest back in July of 2020, that the district investigated by interviewing Mr. Wagner on August 3rd, 2020, Mrs. Wagner, his wife, on August 4th, 2020, and then later made a recommendation that was adopted by the board for his dismissal in September. Your Honors, had the board wanted to dismiss Mr. Wagner solely based on his arrest record, it would have done so in July. Instead, we have by plaintiff's admission in his complaint, you know, several allegations that establish that the district was involved in that discretionary investigatory process. But what, in addition to, so you're saying in addition to the arrest record, you have other evidence. Yes, Your Honor. In addition, the district did attach affidavits to its 2619 motion to dismiss. You didn't attach the police report, why? Was it a four or five page narrative? Correct, we did not attach the police report. We anticipated that that would be more of a summary judgment motion rather than a 2619 motion. So you went into the 2619 as a precursor to your motion for summary judgment? I mean, why not include it? We determined that it was clear from the face of the complaint and from the affidavits that the district, you know, reviewed this information. We didn't think that the details at that time of the police report were necessary because that, to us, got into what opposing counsel is discussing as a not me motion. It's trying to prove that the conduct at issue occurred or didn't occur. What is at issue before, what was at issue before the circuit court and is now at issue before you is whether the district made discretionary determinations, not whether he engaged in the conduct or not. It's whether they took the action to determine if he did engage in such actions rather than dismissing him outright due to his arrest record. So you would have been, in effect, admitting the allegations that one of the considerations for discharge was he was arrested and then based on learning he was arrested, you learned all this other information so you considered all of it. Correct. Not just the arrest record. Is that your position? Correct, Your Honor. And that's the position you took in front of the trial court? Correct, Your Honor. And the Illinois Human Rights Act explicitly allows for this. In the arrest record provision, it explicitly states that employers are not prohibited from considering other information that they gain in order to determine if the conduct at issue did actually occur. And that's exactly what the district did here. Your Honors, I think Brooks v. Daly is particularly instructive in this matter. It's a first district case from 2015. In that case, the plaintiff, who was a former fire city commissioner, brought suit against a mayor and the mayor's chief of staff for forcing his resignation due to sexual harassment allegations. In that case, the court found that Section 2201 of the Tort Immunity Act immunized the mayor and the mayor's chief of staff's decision to terminate the plaintiff because those actions fell squarely within the immunity under 2201. The court further stated that it wouldn't even matter if city officials acted in a manner that was corrupt and malicious in making that employment decision because the plain language of 2201 does not contain an exemption for such actions. It's absolute immunity. Therefore, plaintiff's allegations that the district was untruthful or communicated false information regarding Mr. Wagner when making its determination is nothing more than an attack on the discretionary press. But there is no absolute immunity to a school district to fire a teacher with only an arrest record, is there? Correct. That is illegal. Yes, that's illegal. So then what you're alleging here is just your reasons why you think you can fire him with just an arrest record because you have other reasons, correct? Correct. So isn't that just an answer denying their complaint? No, Your Honor, because here we have established, and this is how a lot of these cases that are the progeny of Smith can be distinguished, is really that the defendant employers were not able to establish that they took discretionary actions. Here we have established that through our affidavits, through the allegations in plaintiff's own complaint. He admits that there was an investigation, that there were interviews, that there was this process before the board, that we had a two-day administrative hearing. So you're just basically, again, refuting the allegations in the complaint. And at this point, isn't the complaint, doesn't the complaint trump that at this point? Your Honor, I think it's clear from the complaint that the investigation and the administrative proceedings, you know, occurred, and courts can make the determination that those decisions were discretionary at the motion to dismiss stage. I also want to discuss briefly Section 2101 of the Tort Immunity Act explicitly identifies statutory violations that are not afforded immunity under the Tort Immunity Act. Notably, the Illinois Human Rights Act is not one of them. Section 2101 of the Tort Immunity Act was passed in 1987, which is eight years after the legislature passed the Illinois Human Rights Act in 1979. Had the legislature intended for the Illinois Human Rights Act to be exempt from the immunity afforded under the Tort Immunity Act, it would have included the Illinois Human Rights Act under Section 2101, as it did with other statutes, such as the workers' comp claim. It didn't. You know, the legislature created the Tort Immunity Act to provide immunity to public entities, so public resources are not spent on certain types of claims. And here, this Court should not infer meaning that the legislature did not intend. In addition to the immunity afforded under Section 201, the district is also entitled to immunity under Section 2208 of the Tort Immunity Act because it instituted and prosecuted an administrative proceeding against Mr. Wagner. Again, from the complaint itself, plaintiff admits that the district was involved in a two-day dismissal proceeding before a hearing officer, that Dr. Schroeders and the individual board members as well as the board as a whole gave a notice of recommendation and effectuated that. So does that make it right if just because everybody signed off on it? I mean, how does that say we have tort immunity because we all signed off on it? I mean, aren't a lot of these allegations that you're making can be disputed and are disputed by the teacher, Mr. Wagner? Your Honor, so here, our argument is that regardless of the allegations that plaintiff makes, that these may have been false allegations that were communicated or they were lying, the Tort Immunity Act doesn't carve out an exception for that type of behavior under 2201 and 2208. Those are absolute immunity provisions that protect the district when they're taking these types of actions. Notably, Mr. Wagner fails to address the immunity granted under 2208 in his brief, and he's therefore waived those arguments. Because the district is immune under 2201 and 2208, the circuit court's dismissal should be affirmed, Your Honors. I do want to quickly address as well plaintiff's allegations that the district's affidavits and motion in general just refuted the properly asserted factual allegations in the complaint. I know we touched on this, but I just want to drive home that, again, plaintiff's own allegations established that there were interviews, that there was this process before the board, and the affidavits were also admitted in support of the district's arguments that 2201 and 2208 immunity apply. Illinois courts have determined that a party must submit affidavits in support of an affirmative matter if it's not apparent on the face of the complaint. These were not affidavits submitted in order to refute the allegations. They were to bolster the district's opinion or position that 2201 and 2208 immunity apply. Yeah, but the immunity applies. Does it apply to, or is it clear-cut that it applies to damages, punitive damages, versus reinstatement? So, Your Honor, the Tort Immunity Act applies specifically to damages and punitive damages. I would ask if this court determines that 2201 and 2208 immunity do not serve as affirmative matters with respect to the equitable relief plaintiff requests, then we request that, should this matter be remanded, it's only remanded for the purposes of that equitable relief, and the dismissal should stand on the issue of damages. Your Honors, because the district is immune under sections 2201 and 2208 of the Illinois Tort Immunity Act, the district respectfully requests that this court affirm the circuit court's dismissal of plaintiff's amended complaint with prejudice. Thank you. Thank you very much. Thank you, Your Honors. Mr. McFly? Yes, thank you, Your Honors. Just to quickly respond to some of the arguments that counsel made, we have the district first. With respect to the allegations in the complaint and the argument that plaintiff has admitted that there was other information that the district obtained, paragraphs 21 and 23 of plaintiff's first amended complaint specifically allege that during the August 3rd and August 4th interviews of plaintiff and Mrs. Wagner that the district conducted, that the district did not obtain any additional information which would indicate that plaintiff, in fact, committed or engaged in the behavior of which he was accused. So that is what's controlling for purposes of a 2619A9 motion. We have specifically alleged that the district did not obtain additional information, which is what would permit an employer to use an arrest record under Section 2-103B of the Human Rights Act. So for the district to say, yes, we did, that is a not true motion. So at this stage, that at most creates a dispute of fact as to whether the district did, in fact, obtain additional information which would indicate that plaintiff engaged in the conduct for which he was accused. Regarding the affidavit of Monica Schroeder and – that no additional information was obtained during those interviews. Correct. Was he present during the interview of his wife? One of the – well, no, but we had that information when we – Based on? When the complaint was filed, we already were in the process of the dismissal hearing under the school code and had all of that information. And had the testimony of Monica Schroeder, had the testimony of Kim Wagner, had the notes, the district's notes from that interview. And your position is the district didn't learn anything from Kim Wagner? Did not learn anything new or additional to what was contained in the police report on which it based its decision. But the police report is not part of the motion. Well, the police report is the – the basis of the complaint is that the district found out about an arrest because it was reported in a police blotter in a local newspaper, obtained the police report, and fired him on the basis of that arrest, which did not lead to a conviction. When the district interviewed Kim Wagner and Brian Wagner in August, it did not obtain any additional information which would confirm that plaintiff did what he was accused of doing in the police report. Typically, the cases that discuss this involve an admission by the employee that, yes, I did this, or an actual conviction, or a video, or some other kind of evidence. In this case, what was actually said in the interviews did not go anywhere beyond what was contained in the police report, except, I would argue, Kim Wagner's statement actually refuted some of the allegations against him. And that if the district had really wanted to know what happened, it would have asked her additional questions to find out what actually happened that night. Now, again, all of that is not what's before this court now on this record. We're merely at the pleading stage. I point that out only to say that this, again, it demonstrates that there is at least a dispute of fact which would require reversal of the circuit court's dismissal. As far as Section 2101 specifically listing some Illinois statutes that are excluded from the Tort Immunity Act, Section 2201, which is the section which the district most heavily relies, begins by saying, except as otherwise provided by statute. So that means that the Tort Immunity Act clearly contemplates that there are other Illinois statutes that exist that were not listed in Section 2101. And though we're in Section 2101, does it indicate that this is an exhaustive list? And as I argued earlier, the Illinois Human Rights Act expressly states otherwise. It expressly states that a public school district can be liable for the civil rights violations that are proscribed under that act, specifically under Section 2-103A. Counsel's argument regarding Brooks v. Daly, again, misses the point. Because in that case, it was the employees who were being sued, not the public employer. Also, I believe that was a tort action. And so, as we noted in a footnote in our brief, the circuit court may have properly relied on Brooks v. Daly to dismiss Count 2 for intentional infliction of emotional distress. We wouldn't have argued that. But its reliance on Brooks v. Daly to dismiss Count 1 under the Human Rights Act was in error and should be reversed. Thank you. Do you have any additional questions? Anything else? No. Thank you very much. Thank you both for your arguments this morning. And we are adjourned.